IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CRISTY R. RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:03CV00791 |
| | ) | |
| PITTER PATTER OF LITTLE FEET, INC., | ) | |
| and CHRISTOPHER CHAVIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION

Tilley, District Judge

This case is now before the Court on Plaintiff Cristy R. Richardson's Motion for Default Judgment [Doc. #5] against Defendants Pitter Patter of Little Feet, Inc. ("Pitter Patter") and Christopher Chavis. The Clerk of Court entered an Entry of Default as to Pitter Patter and Mr. Chavis on October 1, 2003. For the reasons set forth below, Ms. Richardson's Motion for Default Judgment is GRANTED.

I.

Plaintiff Cristy R. Richardson was employed by Pitter Patter from April 2002 to May 2003.[1] Mr. Chavis was the chief executive officer and director of Pitter Patter. While Ms. Richardson was employed by Pitter Patter, a deduction of $84.45 per pay period was taken from her paycheck as payment for group health

---

[1] Upon default, all well pleaded factual allegations, except those relating to the amount of damages, are assumed to be true. S.E.C. v. Marker, 427 F.Supp.2d 583, 586 (M.D.N.C. 2006) (citations omitted).

insurance coverage with United Healthcare of North Carolina, Inc. ("United Healthcare"). However, Pitter Patter and Mr. Chavis failed to remit Ms. Richardson's premiums, as well as the premiums from other Pitter Patter employees, to United Healthcare, resulting in the cancellation of the group health insurance policy as of February 1, 2003. Pitter Patter and Mr. Chavis failed to inform their employees, including Ms. Richardson, that the policy had been cancelled.

Ms. Richardson underwent hysterectomy surgery on April 11, 2003 and incurred a number of medical expenses as a result of this procedure including: (1) $14,143.94 to Moses Cone Health System[2]; (2) $160.42 to Greensboro Pathology Associates; (3) $3,715.00 to Greensboro Gynecology Associates, PA; and (4) $616.00 to Greensboro Anesthesia Physicians. The Defendants have paid $13,000.00 of the Moses Cone Health System bill, leaving an unpaid balance of $1,143.94. Defendants have also paid Greensboro Anesthesia Physicians in full, however, they have failed to pay the amounts owed to Greensboro Pathology Associates or Greensboro Gynecology Associates, PA.

Ms. Richardson initially filed a complaint against Pitter Patter, Mr. Chavis, and United Healthcare in the North Carolina General Court of Justice, Superior Court Division on July 18, 2003 seeking damages, injunctive relief, and attorney's fees. On August 21, 2003, Defendant United Healthcare removed the matter to

---

[2] The original amount owed to Moses Cone Health System was $17,679.93. However, Ms. Richardson's pleadings indicate that this amount should be reduced by a 20% deductible ($3,535.99), resulting in a net amount of $14,143.94.

this Court because it involves a claim to recover benefits and enforce rights under an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

When Pitter Patter and Chavis failed to answer or otherwise appear in this matter, Ms. Richardson moved for Entry of Default as to Pitter Patter and Chavis on September 25, 2003 pursuant to Federal Rule of Civil Procedure 55(a). [Doc. #3]. The Clerk of Court entered an Entry of Default against Pitter Patter and Mr. Chavis on October 1, 2003. [Doc. #4]. On February 6, 2004, Ms. Richardson moved for entry of Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Pitter Patter and Chavis. Pitter Patter and Mr. Chavis have not responded to Ms. Richardson's Motion for Default Judgment.

Ms. Richardson seeks entry of a default judgment against Pitter Patter and Mr. Chavis for outstanding healthcare expenses in the amount of $5,019.36. Ms. Richardson has submitted an affidavit attesting to these expenses in support of her Motion for Default Judgment. [Doc. #6].

Ms. Richardson has also requested an award of attorney's fees. In support of this request, Ms. Richardson's attorney, Norman Smith, submitted an affidavit explaining that he had spent seven and one half hours working on Ms. Richardson's case and that his regular billing rate is $200 per hour. [Doc. #7, at 5]. In addition, Mr. Smith stated that he had accepted Ms. Richardson's case pursuant to a contingency fee arrangement and that application of the contingent fee rate to the amounts he had recovered on behalf of Ms. Richardson would result

in a fee of $6,205.57. [Doc. #7, at 4].

II.

Default judgment is governed by Rule 55(b), which provides that "[w]hen the plaintiff's claim against a defendant is for a sum certain . . . the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or an incompetent person." Rule 55(b)(1). In circumstances where there the sum is not certain or where there is evidence to suggest that the defendant was incompetent or an infant, Rule 55(b)(2) applies, requiring that default can only be make by a court.

In this case, while Ms. Richardson has identified a sum certain for the damages she sustained, Ms. Richardson has also requested an award of attorney's fees, which is not a sum certain. Therefore, this matter has been referred to the Court for decision.

A.

Ms. Richardson has submitted an affidavit for a sum certain, $5,019.36, in support of her claim against the Defendants for healthcare expenses that would have been covered by Ms. Richardson's group healthcare plan. Based upon this affidavit, a DEFAULT JUDGMENT should entered against the defendants in the amount of $5,019.36.

B.

Awards of attorney's fees are allowed, but are not required, under ERISA.

29 U.S.C. § 1132(g). In order to aid district courts in determining whether attorney's fees should be awarded in ERISA matters, the Fourth Circuit developed five factors to provide general guidelines for district courts: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017, 1029 (4th Cir.1993).

     In response to a request [Doc. #8] for additional information related to these five factors, Mr. Smith submitted a supplemental affidavit. [Doc. #9]. In his supplemental affidavit, Mr. Smith explained that there is a "recurrent and repetitive theme" of employers "collecting health insurance premiums out of their employees' paychecks, which should by rights be held in trust, but instead expending them for other purposes," which results in cancellation of the employees' health insurance. [Doc. #9, ¶ 5]. Mr. Smith believes that Pitter Patter and Mr. Chavis have sufficient assets to satisfy an award of attorney's fees. [Doc. #9, ¶ 4]. Mr. Smith acknowledged that this case does not involve other beneficiaries or participants in the ERISA plan and will not resolve a significant legal question regarding ERISA. [Doc. #9, ¶ 6].

     In considering the pleadings in this matter including the complaint and the

affidavits from Ms. Richardson and Mr. Smith, Ms. Richardson is entitled to an award of attorney's fees. In particular, the defendants' conduct in deducting health insurance premium payments from employees and not remitting those payments to the health insurer is egregious and constitutes bad faith. In addition, the only evidence before the court indicates that Mr. Chavis has the means to pay a judgment awarding attorney's fees. Moreover, there does not appear to be any defense to the allegations in the complaint, which Pitter Patter and Mr. Chavis have apparently conceded by engaging in discussions with Mr. Smith[3] but failing to make any appearance in this action. Finally, although Ms. Richardson has not filed this action on behalf of any other similarly situated plaintiffs, an award of attorney's fees in this matter will deter these defendants and could deter other employers from committing similar acts against their employees.

Having determined that an award of attorney's fees is appropriate, it is necessary to determine the amount of such an award. When determining the proper amount of an award for attorney's fees, the Fourth Circuit first determines a "lodestar" figure "by multiplying the number of reasonable hours expended times a reasonable rate." Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir.1986); See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (explaining that the "most useful starting point for determining the amount of a reasonable fee" is to determine the lodestar amount, which is "the number of hours reasonably expended on the litigation

---

[3]Mr. Smith's initial affidavit states that the has engaged in "conferences with defendant Christopher D. Chavis." [Doc. #7, ¶ 5].

multiplied by a reasonable hourly rate"). In deciding what constitutes a reasonable number of hours and a reasonable rate, district courts should be guided by the Johnson factors.[4]

Based on the information presented by Mr. Smith in his first affidavit, calculation of the lodestar figure (attorney time multiplied by regular billing rate) would result in a fee of $1500.00. Mr. Smith has also explained that he took Ms. Richardson's case pursuant to a contingency fee arrangement and that application of the contingent fee rate to the amounts he has recovered on behalf of Ms. Richardson results in a fee of $6,205.57. [Doc. #7, at 4]. Thus, Mr. Smith's requested fee is more than four times greater than the lodestar.

In support of the award he seeks, Mr. Smith explains that individual ERISA cases "are generally not regarded to be desirable by members of the bar," [Doc. #9, ¶ 16] and that due to "its complexity, any ERISA litigation requires significant skill and experience on the part of counsel." [Doc. #9, ¶6].

While recognizing that ERISA litigation can be both complex and time consuming, it is difficult to accept Mr. Smith's assertion that this matter was

---

[4] The Johnson factors include (1) the time and labor expended; (2) the novelty and difficulty of the questions; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and abilities of the attorneys (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the Client; and (12) fee awards in similar cases. Daly v. Hill, 790 F.2d 1071, 1076 n.2 (listing factors from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

particularly complex or time consuming. To the contrary, this case involved an employer deducting health care premiums from an employee's paycheck and failing to pay the premiums to the insurer, which resulted in termination of employee health coverage. The defendants did not even attempt to prepare a defense to this matter, presumably because there was none. In addition, because the matter was uncontested, Mr. Smith was not required to engage in costly discovery and motion practice. Moreover, Mr. Smith's testimony that he spent seven and one half hours on this matter defeats a claim that this case was particularly time consuming. In fact, Mr. Smith even acknowledged that the relatively brief amount of time he spent on Ms. Richardson's case generally "did not preclude other employment." [Doc. #9, ¶ 11].

With respect to comparable fees in other cases, Mr. Smith does not provide the Court with specific examples of similar cases in which courts awarded attorney's fees in an amount equal to four times the lodestar. Rather, Mr. Smith asserts only that "[c]ustomary fees in these cases vary. Some are brought on contingent fee basis. Some are brought on an hourly fee basis." [Doc. #9, ¶ 12]. Ultimately, Mr. Smith acknowledges that he "does not have an awareness of awards by courts in similar cases." [Doc. #9, ¶ 18].

In sum, based on the information presented by Mr. Smith, the lodestar figure for attorney's fees in this matter is $1500.00. Mr. Smith has requested an award of fees in excess of four times that amount. Although Mr. Smith took Ms. Richardson's case on a contingent basis, Mr. Smith has not presented evidence that

would warrant such a significant increase in the lodestar amount. In consideration of the lodestar figure and the <u>Johnson</u> factors – particularly the time and labor expended, the novelty and difficulty of the questions raised, and the preclusion of other employment by the attorney due to acceptance of the case – Mr. Smith is entitled to an award of attorney's fees in the amount of $1500.00

III.

For the foregoing reasons, Plaintiff Cristy R. Richardson's Motion for Default Judgment is GRANTED. Ms. Richardson is entitled to entry of a judgment in the amount of $5,019.36 for healthcare expenses that would have been covered by United Healthcare and attorney's fees in the amount of $1500.00 for a total judgment of $6519.36.

This the day of November 22, 2006

/s/ N. Carlton Tilley, Jr.<br>
United States District Judge